UNITED STATES v. CROWN RUBBER SUNDRIES CO. et al.

No. 18712.

District Court, N. D. Ohio, E. D.
July 12, 1946.

Don C. Miller, U. S. Atty., and William C. Graves, Asst. U. S. Atty., both of Cleveland, Ohio, for the United States.

Roy C. Scott, of Cleveland, Ohio, for defendants.

FREED, District Judge.

The matter for decision involves the interpretation of Title 21 U.S.C.A. § 333(c).

What is the extent of the immunity granted by this section to a distributor, who has branded and sold a product relying upon a guaranty of compliance with the Federal Food, Drug, and Cosmetic Act, received from his manufacturer or seller in good faith?

The essential facts are not in dispute.

Crown Rubber Sundries Co., a partnership; and one of the partners, individually, Joseph Lader, were charged in eight counts of an information alleging violation of Title 21 U.S.C.A. § 331(a) and Title 21 U.S.C.A. § 352(a) in the shipment and sale of rubber prophylactics which were, in fact, ineffective for prophylactic purposes because of the presence of holes and perforations in the devices.

It is not disputed that the goods shipped in interstate commerce were adulterated and misbranded.

The defendants rely solely upon the claim that they are free from guilt because they received a guaranty given them by the L. E. Shunk Latex Products, Inc., the manufacturer, warranting that all the merchandise complied with the provisions of the Pure Food, Drug and Cosmetic Act, and authorizing them to make the same guaranty to their distributees.

The undisputed facts show that the defendants received the merchandise in bulk, that they repacked the prophylactics in individual containers bearing their own labels and shipped them to their own customers. There was some evidence tending to show that the merchandise was acquired by the purchase of a wholesale business which had in stock the prophylactics which the original owner had purchased from the Shunk company.

Since the purchase was not made directly from the manufacturer, it is questioned whether the guaranty made to these defendants could inure to their benefit. It is urged by the Government that the guaranty which affords a defense is only one which is made to him who purchases directly from the guarantor.

Although the court is of the opinion that the Government's contention in this regard is correct, the real issue is whether the defense of the guaranty, as a matter of law, can be made under the state of the evidence which is not in dispute.

Assuming, for the purpose of the instant case, that the defendants did have a right to rely upon a guaranty received from someone other than the person from whom they purchased the merchandise, the question remains whether the guaranty affords a defense under the statute.

The decided cases have not dealt with the question here raised. The report of the Congressional committees throws no light upon the intent of Congress as affects the immediate issue.

The effect of the guaranty, in the Committees' report, is touched upon briefly as affording protection to a manufacturer who ships his products to distant processors who, in turn, package and label the finished merchandise. The Committees' report indicates it was the intent of Congress to relieve the manufacturer of the effect of violations of the Act that result from the processing of his products by others for whom the manufacturer should not be liable.

Neither the reported cases, nor the Committees' report deals with the question of the defense available to the shipper who holds a guaranty from the manufacturer.

It is fundamental that the purpose of the Act is to protect the consumer. Public policy casts upon those who introduce foods, drugs and cosmetics into interstate commerce the duty of rigid inspection. They are charged with absolute responsibility for proper branding of their products. Public safety demands of them not only extreme care, but definite assurance of the quality of their products.

It is the judgment of this court that no person may rely upon any guaranty unless, in introducing the product into interstate commerce, he has acted merely as a conduit through which the merchandise reaches the consumer.

The protection of the exemption clause of the statute does not include within its

ambit those who, in any way handle or process the product to which the guaranty attaches, if one has been given.

The guaranty can be received in good faith, within the meaning of the statute, only if the shipper passes the product on in the same form as he receives it, without repacking it or subjecting it to any new hazards of adulteration or failure which were not present when the original guaranty upon which he relies was given.

The facts in this case show the prophylactics were purchased by the defendants in bulk and that they repackaged and relabeled them. They shipped them in cartons bearing their own trade name.

When this state of facts appears, in the judgment of the court, as a matter of law, the defense of the guaranty no longer is available to the defendants.

Such an interpretation, the court believes, would be in accord with the intent of Congress, as reflected both by the general purpose of the Act and the language of the Committees in treating the extent of the defense available to the manufacturer.

Since the defense of the guaranty is not available to the defendants, and since the evidence establishes every other element of the offenses charged, it is the judgment of the court that they must be found guilty of the violations charged in the information.